Milligan, J.,
delivered the opinion of the Court.
This is an application in the Chancery Court at Bolivar, by the administrator, with the Will annexed, of Archer Pledge, deceased, to sell certain lands and slaves belonging to the estate, for the payment of debts. All the intermediate steps necessary to a valid sale, appear to have been regular. The proper interlocutory orders and accounts were taken, and the sale of the lands and negroes ordered by the Chancellor at the February Term, 1861. The slaves were directed to be sold on a credit of twelve months, and the lands at one and two years, with bonds and security for the payment of the purchase money.
Under this order, the Master proceeded, on the 28th of March, 1861, to sell, as directed in the order of February, 1861, and struck off and sold, the lands to various purchasers, who are not complaining in this Court. Six of the negroes were sold' to the defendants, Pul-liam & Falls, at $5,231; one to John A. Pledge, at $1,008; and one to R. M. Crow, at $1,641. At the date of the sale, the slaves were delivered to the several purchasers, and their notes respectively, taken, with security for the purchase money, due and payable at twelve months from date.
It further appears, that the Master, shortly after the sale, and before the next term of the Court, made out *386 and filed bis report of sale with tbe papers in tbe cause; but tbe war intervened, and tbe Court at Bolivar was suspended until after its close, in 1865. In tbe meantime, the report of sale, with other papers in tbe cause, were lost, or unavoidably destroyed.
At tbe September Term, 1866, the complainant asked and obtained leave to supply tbe report of sale. A substantial copy, under tbe proper orders of Court, was produced, and without serious objection, substituted for tbe original. And thereupon, a motion was made for its confirmation, and an order for tbe payment of tbe purchase money due on tbe sale of tbe slaves.
This application was opposed by tbe purchasers, on tbe ground that tbe Master’s report of sale bad not been confirmed, and tbe title thereto, vested; and that no title, since tbe emancipation of tbe slaves in this State in 1865, could now be vested in tbe purchasers.
Tbe Court refused to confirm tbe sale as to tbe slaves, and directed tbe notes given therefor to be delivered up and cancelled; from which tbe complainant appealed in error, to this. Court.
Tbe single question presented in this state of tbe record, is, at whose risk tbe slaves sold by tbe Master were, between tbe sale and delivery of tbe slaves and tbe time of confirmation of tbe report of sale? This is a question, which, at tbe present time, is of no little importance, both in its practical results to suitors, and its consequences upon judicial sales. Tbe English mode of conducting sales in tbe Master’s office, is so different from our practice, that but slight analogies can be drawn from that source. There tbe sale has tbe attri- *387 trates of a private sale. The Master- gives notice, receives the bids, and reports the highest bidder; and if his report be confirmed, the title is examined and the conveyance prepared; the whole proceeding is in fier% until the final settlement of the title. “But,” says Chancellor Kent, in the 4th vol. of his Commentaries, 192, “With us the sale at public auction is ordinarily a valid and binding contract, as soon as the hammer is down. The Master sells at public auction, on due notice, and the purchaser becomes entitled to a deed, unless there be fraud, mistake, or some occurrence, or some special circumstances, affording, as in other cases, a proper ground for equitable relief.”
But this rule is more directly applicable to sales of real estate; and it has not, to the full 'extent, been sanctioned by this Court. In the case of Smith & Co. vs. Sloan, 11 Hum., 278, and also, in Owen vs. Owen, 5 Hum., 335, and perhaps others, this Court held, that notwithstanding it did not regard a Master’s sale as complete until after the. confirmation of his report of sale, yet, it refused to recognize the doctrine, that the “Chancellor had no power to set aside the sale, except upon grounds that would authorize a Court of Chancery to set aside a private sale.”
This general doctrine has, in a number of reported cases, been repeatedly recognized by this Court, and it has become too firmly established as a rule of law in this State, now to be disturbed. But few of our reported cases present the precise point raised in this record. Here, the property sold was personal property, and the possession delivered to the purchasers on the *388 day of sale, The property, as such, was rendered valueless before the confirmation of the report of sale, by the exercise of the sovereign power of the people, in amending the Constitution of the State, whereby slavery was abolished. Now, upon whom must the loss fall? As a general rule, the loss follows the ownership; and in view of this rule, this Court, in the case of Graves, Comm’r, etc., vs. Keaton et al., 8 Cold., 8, held in a case somewhat similar to this case, that the loss must be borne by the parties in whom the ownership was found to exist at the time of the loss, or .destruction of the property. But in this case, it does not appear, in the opinion of the Court, that the property sold, was delivered. But, without now attempting to determine, what difference the sale of personal property without delivery, would make upon the validity of the contract, we feel bound to hold, upon the authority of the cases of Butler vs. Coward, Meigs’ R., 22-27, and Newman and Wife vs. Fred. Sloan, MSS., (which is appended to this opinion,) that in this case the loss must fall upon the purchasers. These cases are authoritative, and directly upon the point raised in this record; while the case of Graves, Comm’r, etc., vs. Keaton et al., is not, in all respects, like the case now under consideration; and in its decision, the above cited cases do not appear to have been presented to the Court.
But, aside from the authority of our predecessors, it seems to us, to hold otherwise would be to give no effect whatever, to a Master’s sale before confirmation, and leave it wholly within the power of the Chancellor, to re-open the biddings, or set aside the *389 sale at Ms discretion, without more. This has never been regarded as the rule in cases of Chancery sales; and if adopted now, would tend greatly to depreciate the value of such sales, and deter bidders.
The sale, it is true, is not complete, until the report is confirmed; nor can the purchaser be compelled, before confirmation, to complete his purchase; and vice versa, he can not compel its completion by a conveyance until after confirmation: Childress vs. Hart, 2 Swan, 487. But, in this case, the purchasers had complied with the terms of the sale, by executing their notes, and elected at the date of the sale, to receive the slaves purchased by them; and they have continued to hold and use them as their own, as we infer from the record, from the date of the sale in March, 1851, until they were emancipated in February, 1865. The risk was voluntarily assumed by them. They have had the use and benefit of 'the property sold, and have now no power to return the slaves received by them; and must therefore bear the loss.
The decree of the Chancellor will be reversed, and a decree entered here according to this opinion.
[Note. — The Reporter will publish the opinion in the case of J, E. Newman and Wife vs. Fred Sloan, MSS; herewith filed,' as part of this opinion.
MILLIGAN.]